UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT (BRIDGEPORT)

| | |
|---|---|
| In re:<br><br>OW BUNKER HOLDING NORTH AMERICA Inc., et al.[1]<br><br>Debtors. | Chapter 11<br>Case No. 14-51720 (AHWS)<br><br>Adversary Pro No. _____ |
| SILVERSEA CRUISES LTD.<br><br>Plaintiff,<br><br>-against-<br><br>OW BUNKER USA, INC., OW BUNKER HOLDING NORTH AMERICA INC., OW BUNKER NORTH AMERICA INC., OW BUNKER & TRADING A/S, OW BUNKER A/S, PACIFIC ENERGY SOUTH WEST PACIFIC LIMITED, and ING BANK NV,<br><br>Defendants. | Jointly Administered |

## COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF

Plaintiff, Silversea Cruises Ltd., by its attorneys, Hill, Betts & Nash LLP, in its Complaint for Interpleader and Declaratory Relief, alleges as follows:

### A.   NATURE OF ACTION

1. This Interpleader action is to resolve competing claims to amounts owed the Debtors and/or other third parties pursuant to the sale and delivery of bunker fuel (at times, "bunkers," "bunker fuel," or "fuel") to the vessel SILVER EXPLORER (the "Vessel") in the Port of Lautoka, Suva, Fiji, on or about October 18, 2014. The above-captioned debtors (the "Debtors"), Pacific Energy South West Pacific Limited ("Pacific"), and other third parties,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' taxpayer identification numbers, are as follows: O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556).

{NY172068.6 }

1

identified below, have conflicting claims as to the ownership of funds owed by plaintiff, for the purchase and receipt of such bunker fuel by the Vessel. In particular, plaintiff is faced with demands for payment and the threat of vessel arrest by the Debtors, by Pacific (the unpaid physical supplier of the bunkers which plaintiff contracted to purchase from the Debtors) and ING Bank, NV ("ING"), as security agent under a security agreement with the Danish parent and other affiliates of the Debtors. ING has also asserted before this Court that it has a senior right to all funds which may be paid by customers of the Debtors as receivables subject to a certain financing by ING of the Debtors' insolvent Danish parent companies. Plaintiff is faced with uncertainty as to the proper recipient of the $143,920.00 owed pursuant to sale and delivery of the bunker fuel (the "Disputed Funds"). Prior to and in lieu of making any payment to one or more parties plaintiff seeks relief: (1) to permit it to deposit into this Court the Disputed Funds sufficient to satisfy the conflicting claims; (2) *inter alia*, a declaration that: the deposit of such funds will discharge plaintiff's obligations with respect to the payment for the bunkers, and that such parties as may assert conflicting claims may pursue their claims against the deposited Disputed Funds; which shall also serve as the substitute *res* for any *in rem* action such parties may seek to commence; and (3) further ordering that upon deposit of the Disputed Funds with this Court such parties shall be enjoined from the threatened or actual arrest of the Vessel, or a sister ship or associated vessel or other action against plaintiff by reason of the aforesaid claims.

## B. PARTIES

2. Plaintiff is a corporation organized and existing under the laws of the Bahamas, with a registered office located at Sassoon House, Shirley Street & Victoria Ave., Nassau, The Bahamas and a place of business at 110 East Broward Boulevard, Fort Lauderdale, Florida 33301. Plaintiff operates a fleet of vessels in the cruise trade, including the MV SILVER EXPLORER.

3. Defendant OW Bunker USA, Inc. (the "OW USA") is a corporation organized and existing under the laws of Texas, with its principal place of business located at 2603 Augusta Drive, Suite 440, Houston, TX 77057, and is a debtor before this Court.

4. Defendant OW Bunker Holding North America Inc. ("OW Holding") is a corporation organized and existing under the laws of Connecticut, with an office and place of business at 281 Tresser Blvd, 2 Stamford Plaza, 15th Floor, Stamford, CT 06901, and is a debtor before this Court.

5. Defendant OW Bunker North America Inc. is a corporation or business entity organized and existing pursuant to the laws of Connecticut, with an office and place of business at 281 Tresser Blvd, 2 Stamford Plaza, 15th Floor, Stamford, CT 06901, and is a debtor before this Court.

6. On information and belief, Defendants, OW Bunker A/S and O.W. Bunker & Trading A/S are corporations or business entities organized and existing pursuant to the laws of Denmark, with registered offices at Stigsborgvej 60, DK-9400, Norresundby, Denmark (the "Danish OW Entities").

7. Defendant Pacific is a corporation or business entity organized and existing pursuant to the laws of the state of Fiji, with an office and place of business within the jurisdiction of this Court at P.O. Box 488, Pago Pago, Tutuila, American Samoa 96799.

8. Defendant ING is a bank organized and existing pursuant to the laws of the Netherlands with an office and place of business located at Bijlmerplein, 1102 MG Amsterdam, The Netherlands.

## C.   JURISDICTION AND VENUE

9. The preceding paragraphs are incorporated by reference as if fully set forth herein.

10. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§1331, 1333, 1334, 1335, and 2361 and Rule 22 of the Federal Rules of Civil Procedure, as applied to this adversary proceeding by Rule 7022 of the Federal Rules of Bankruptcy Procedure. This is an admiralty and maritime claim within the meaning of Federal Rules of Civil Procedure 9(h).

11. This is a core proceeding pursuant to 28 U.S.C. §157(b).

12. Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §1409(a).

13. This Court has personal jurisdiction over each of the Debtors.

14. This Court has personal jurisdiction over Pacific which transacts business within the United States, maintaining an address in the United States for service of process.

15. This Court has personal jurisdiction over ING. ING transacts business within the United States, maintaining an address in the United States for service of process. In addition, ING appeared in the Debtors' Chapter 11 cases, and has been participating in the Debtors' cases.

{NY172068.6 }

4

16. Upon information and belief, the Court has personal jurisdiction over Defendants OW Bunker A/S and O.W. Bunker & Trading A/S, *inter alia* by virtue of the appearance of ING in this proceeding, asserting rights of and/or as agent for the foregoing entities pursuant to powers granted in an English Omnibus Security Agreement, dated December 19, 2013, between and among said entities (as Chargors) and ING.

### D. BACKGROUND

17. The preceding paragraphs are incorporated by reference as if fully set forth herein.

18. On or about September 20, 2014 and/or October 13, 2014, Debtor OW USA ordered from Pacific fuel bunkers to be loaded onboard and consumed by the Vessel. The bunkers were to be supplied to the Vessel in Lautoka, Suva, Fiji. A true and correct copy of the purchase order issued by FleetPro Ocean Inc. ("FleetPro") is attached hereto as Exhibit A.

19. On October 18, 2014, the bunkers were supplied to the Vessel in the Port of Lautoka, Suva, Fiji.

20. On or about October 18, 2014, Debtor OW USA sent to plaintiff an invoice dated that same date for the cost of the fuel to plaintiff demanding payment on or by November 16, 2014. A true and correct copy of the invoice for the cost of fuel is attached hereto as Exhibit B.

21. On November 17, 2014, plaintiff via FleetPro received an email from Pacific. A true and correct copy of the email is attached hereto as Exhibit C.

22. In the November 17, 2014 email, as well as earlier emails, Pacific referred to the insolvency of Debtor OW USA and its group and reported that the Debtor OW USA would not pay their invoice for the bunkers. Pacific requested payment be made to Pacific directly, in an amount slightly less than the amount demanded by the Debtor OW USA. Pacific asserted a

{NY172068.6 }

5

maritime lien and threatened to arrest the Vessel, or a sister ship, or an associated ship, absent such payment to Pacific. *Id.*

23. In addition, on or after November 19, 2014, plaintiff received a demand letter of that same date from ING. A true and correct copy of the letter is attached hereto as Exhibit D.

24. In the November 19, 2014 letter, ING demands that plaintiff make certain payments to ING pursuant to an "English Omnibus Security Agreement dated 19 December 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank N.V. as Security Agent" (the "2013 Security Agreement") under which the Debtors allegedly granted certain powers and assigned certain rights in respect of their bunker supply contracts as security to ING.

25. On November 13, 2014, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut (the "Court").

26. On November 18, 2014, at the hearing before the Court on the "first day" motions filed with the Court on behalf of the Debtors, the Court agreed that the cases (the "Cases") should be administratively consolidated.

27. As of the date of this Complaint, Pacific has not appeared in the Debtors' Cases.

28. On November 25, 2014, the Debtors commenced an adversary proceeding against ING seeking, among other things, to avoid certain alleged liens conveyed to ING under the 2013 Security Agreement (Adv. Pro. No. 14-05063). The adversary proceeding against ING remains pending before this Court and ING's rights, if any, to the payments due to the Debtors from their customers, have not yet been resolved.

29. The Vessel is subject to arrest by Defendants asserting maritime liens.

30. Due to the bankruptcy filings of the Debtors, it is anticipated that Pacific, ING, or another party may each take immediate action to collect the funds alleged to be owed for the bunkers, and do so in different courts, multiplying the risk of inconsistent determinations and plaintiff's litigation costs and permitting a windfall for one party at the expense of the others. In addition, such litigation may adversely affect any right of the Debtors' to the Disputed Funds, the basis of which derives from the Debtors' own obligation to pay for the fuel it ordered on behalf of its customers.

### E. RISK OF ARREST OF VESSEL AND THE NECESSITY FOR INTERPLEADER

31. Under federal maritime law, the contract supplier of necessaries, including fuel, to a vessel obtains a maritime lien against the vessel. Under certain circumstances, a physical supplier may also assert a maritime lien on that vessel.

32. Claimants may have already asserted, or may assert rights to amounts owed for the sale of necessaries to the Vessel, giving rise to a maritime lien under federal maritime law and/or the Maritime Lien and Commercial Instruments Act, 46 U.S.C. §31301 *et seq*.

33. Plaintiff cannot ascertain whether the Disputed Funds should be paid to the Debtor OW USA, Pacific, any of the Danish Entities, or ING in order to extinguish all maritime liens against the Vessel and to prevent its arrest.

34. The Vessel regularly calls into ports on its cruise itinerary and could face arrest by one or more of the Defendants claiming to assert a maritime lien, which could cause harm to plaintiff, delay the Vessel, and affect innocent third parties.

35. Plaintiff presently has control over the Disputed Funds but disclaims any interest therein.

36. The competing claims of the Defendants or other third parties may expose plaintiff to multiple liabilities in connection with the payment of the Disputed Funds in order to extinguish competing maritime lien claims and/or other *in personam* or non-maritime claims.

37. Such liability may include not only the cost of posting security to free the Vessel or associated vessels from each arrest, as may be pursued by parties asserting maritime liens, as well as the potential for multiple litigations over the same Disputed Funds in different jurisdictions

38. In addition, there would be substantial loss and damage to plaintiff caused by delay to the Vessel or associated vessels for every day lost sitting idle in port subject to an arrest, disrupting the cruise itinerary and giving rise to potential claims by passengers.

39. Plaintiff is entitled to deposit with the Court the Disputed Funds representing the amount due for the bunkers and require that the Debtors, Pacific, and any other claimant interplead; among themselves to establish their respective rights to the invoiced funds.

40. After depositing the Disputed Funds with the Court, plaintiff is entitled to be discharged from further liability with respect to the Disputed Funds. The Vessel is similarly entitled to be discharged from any maritime liens against them arising from the supply of the bunkers and free from any further threat of arrest and/or action by all parties asserting claims to payment from the Disputed Funds.

### F.   **INTERPLEADER REQUIREMENTS**

41. The preceding paragraphs are incorporated by reference as if fully set forth herein.

42. The respective claims to the Disputed Funds by the Debtors and Pacific are adverse and conflicting and are made without collusion. Plaintiff is unable to determine which, if any, of the claims are valid and/or in what amount(s).

43. Plaintiff cannot pay the Disputed Funds to any party without this Court's determination of the respective interests in such Disputed Funds.

44. Because plaintiff lacks knowledge or information sufficient to determine the rights of any party to the Disputed Funds, plaintiff contests the alleged rights of all parties asserting a claim to the Dispute Funds in its possession. Due to the amount at issue, which is in excess of $500, plaintiff is willing to place the Disputed Funds into the Court's registry, preserving the Disputed Funds and reserving all rights and claims thereto, pending a determination by this Court of the respective rights to such Disputed Funds.

45. Plaintiff has no interest as a claimant in the Disputed Funds.

### G.     AUTOMATIC STAY NOT APPLICABLE

46. The preceding paragraphs are incorporated by reference as if fully set forth herein.

47. This is not an action to obtain possession of property held by the Debtors, as required for the invocation of the automatic stay under section 362 of the Bankruptcy Code; rather, it is an action that seeks to place the Disputed Funds within the control of the Court (or other court to which this Court may decide to transfer this action), to determine whether the Disputed Funds or some part of thereof, rightfully belongs to the Debtors or third party(ies).

48. While the Debtors are named as defendants herein, their status in that regard is nominal. In making a claim to the Disputed Funds, a Debtor would be a claimant, fulfilling the role of a plaintiff in this action.

### H.     RESERVATION OF RIGHT TO TRANSFER

49. The Plaintiff reserves the right to seek transfer of this action pursuant to Rule 7087 of the Federal Rules of Bankruptcy procedure, invoking 28 U.S.C. § 1412, as may be necessary for the determination of maritime claims or otherwise.

{NY172068.6}
9

I.     **CONCLUSION AND PRAYER**

BASED UPON THE FOREGOING, plaintiff respectfully requests that the Court enter an order:

(1) Directing plaintiff to deposit the Disputed Funds into the Court's registry;

(2) Upon plaintiff's deposit of the Disputed Funds into the Court's registry, releasing and discharging plaintiff from any and all liability to any defendant and any other interested persons and all those claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Disputed Funds;

(3) Upon plaintiff's deposit of the Disputed Funds into the Court's registry, releasing and discharging the Vessel from any and all liability to any defendant and any other interested persons and all those claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Disputed Funds;

(4) Requiring all parties and all other individual or entities claiming a right to the Disputed Funds to appear and assert their respective claims to such Disputed Funds, if any;

(5) Enjoining all parties and all other interested persons from instituting or pursuing any proceedings in any court, federal or state, domestic or foreign, against plaintiff for the recovery of such Disputed Funds, on account of any party's purported claims or rights to such Disputed Funds;

(6) Enjoining all parties and all interested persons from instituting or pursuing any proceedings in any court, federal or state, domestic or foreign, affecting the property and res involved in this action of Interpleader, including but not limited to the arrest or attachment of the Vessel or any sister ship or associated ship, pursuant to Supplemental Admiralty Rule C, or other

*in rem* or *quasi in rem* proceeding, to enforce any maritime and/or maritime lien claims until the further order of the Court;

(7)  If the Court deems it necessary, declaring that the automatic stay pursuant to section 362 of the Bankruptcy Code does not apply to this action of Interpleader; or modifying the stay, as appropriate, under section 362(d)(1), to permit this action to proceed; and

(8)  Granting plaintiff such other and further relief, at law or in equity, as may be just, including but not limited to its costs and attorneys' fees in this action.

Dated: Southport, Connecticut
December 22, 2014

Respectfully submitted,

LENNON MURPHY CAULFIELD &
PHILLIPS, LLC


Patrick F. Lennon (ct11950)
Tide Mill Landing
2425 Post Road, Suite 302
Southport CT 06890
Tel: 203-256-8600 / 203-255-5700
Fax: 203-256-8615 / 203-255-5702


HILL, BETTS & NASH LLP

By: /s/ James D. Kleiner
James D. Kleiner (ct00595)
(*pro hac vice* application pending)
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Telephone: (212) 839-7000
Facsimile: (212) 466-0514
Email: jkleiner@hillbetts.com
mjaffe@hillbetts.com
Attorneys for Plaintiff Silversea Cruises Ltd

{NY172068.6}

11